**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
JOSEPH L. RAINONE,

                               Plaintiff,

          -against-                        **MEMORANDUM OF
                                                                 DECISION AND ORDER**
JOHN E. POTTER, POSTMASTER GENERAL,   01-cv-05405 (ADS)

                               Defendant.
----------------------------------------------------------X

**APPEARANCES:**

    **JOSEPH L. RAINONE**
    Pro Se Plaintiff
    1631 Kenneth Avenue
    Baldwin, New York 11510-1602

    **ROSLYNN R. MAUSKOPF
    UNITED STATES ATTORNEY
    EASTERN DISTRICT OF NEW YORK**
    Attorneys for the Defendant
    610 Federal Plaza, 5th Floor
    Central Islip, New York 11722-4454
           By:   Vincent Lipari, Assistant United States Attorney, Of Counsel

**SPATT, District Judge.**

Pro Se plaintiff Joseph L. Rainone ("Rainone" or the "Plaintiff") filed this discrimination action against his employer, the Postmaster General of the United States Postal Service ("USPS" or the "Defendant") claiming that he was not promoted due to his gender and in retaliation for protected activity. The matter was tried to a jury from July 18, 2005 to July 29, 2005. At the conclusion of the trial, the jury rendered a verdict in favor of the Defendant on the claim of gender discrimination and in favor of

the Plaintiff on the retaliation claim. The jury awarded the Plaintiff the sum of $11,166, representing the five year differential in salary between his original position and the promotion that he was denied. In addition, the jury awarded the Plaintiff the sum of $175,000 as damages for emotional distress caused by the Defendant's failure to promote him.

The Defendant moved for a new trial pursuant to Fed. R. Civ. P. 59 on the ground that the award for the Plaintiff's emotional distress was excessive. On his part, the Plaintiff has moved pursuant to Fed. R. Civ. P. 54(d) for costs.

## I. DISCUSSION

### A. The Defendant's Motion for a New Trial on Damages

A district court may order a new trial in whole or limited to damages, or grant remittitur by conditioning the denial of a defendant's motion for a new trial on the plaintiff accepting the reduction in damages, if the court finds that the damages awarded by the jury are excessive. See *Tingley Sys. v. Norse Sys.*, 49 F.3d 93, 96 (2d Cir. 1995). Remittitur describes "the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1328 (2d Cir. 1990) (quoting *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir. 1984)).

The decision whether to grant a new trial following a jury trial under Rule 59 is "committed to the sound discretion of the trial judge." *Metromedia Co. v. Fugazy*, 983

F.2d 350, 363 (2d Cir. 1992). "This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Textile Deliveries, Inc. v. Stagno*, 52 F.3d 46, 49 (2d Cir. 1995). Even if substantial evidence exists to support the jury's verdict, a court has the power to grant a new trial under Rule 59. *See Song v. Ives Laboratories, Inc.*, 957 F.2d 1040, 1047 (2d Cir. 1992).

In general, a motion for a new trial should not be granted unless the court is "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 623 (2d Cir. 2001). "A plaintiff is not permitted to throw himself on the generosity of the jury. If he wants damages, he must prove them." *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1144 (7th Cir. 1985). In determining whether the jury reached a "seriously erroneous" result, the district court "is free to weigh the evidence and 'need not view [the evidence] in the light most favorable to the verdict winner.'" *Farrier v. Waterford Bd. of Educ.*, 277 F.3d 633, 634 (2d Cir. 2002) (quoting *DCL Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998))

Under federal law, an award will not be disturbed unless it is "so high as to shock the judicial conscience and constitute a denial of justice." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990); *accord Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998). While no two cases are exactly alike, a comparison of other employment

discrimination cases is instructive so as to determine whether the award of $175,000 to Rainone for emotional distress is so high as to "shock the judicial conscience."

In the employment discrimination context, there appears to be a "spectrum" or "continuum" of damage awards for emotional distress. *See* Michelle Cucuzza, *Evaluating Emotional Distress Damage Awards to Promote Settlement of Employment Discrimination Claims in the Second Circuit*, 65 Brook. L. Rev. 393, 427–28 (1999). The spectrum of damage awards ranges from $5,000 to more than $100,000, representing "garden-variety," "significant," and "egregious" emotional distress claims.

> At the low end of the continuum are what have become known as "garden-variety" distress claims in which district courts have awarded damages for emotional distress ranging from $ 5,000 to $ 35,000. "Garden-variety" remitted awards have typically been rendered in cases where the evidence of harm was presented primarily through the testimony of the plaintiff, who describes his or her distress in vague or conclusory terms and fails to describe the severity or consequences of the injury. . . .
>
> The middle of the spectrum consists of "significant" ($ 50,000 up to $ 100,000) and "substantial" emotional distress claims ($ 100,000). These claims differ from the garden-variety claims in that they are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony or evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses.
>
> Finally, on the high end of the spectrum are "egregious" emotional distress claims, where the courts have upheld or remitted awards for distress to a sum in excess of $ 100,000. These awards have only been warranted where the discriminatory conduct was outrageous and shocking or where the physical health of plaintiff was significantly affected.

Id. at 429 (footnotes omitted).

For example, in *Norville v. Staten Island University Hosp.*, No. 96-5222, Mem. & Order at 5–13 (E.D.N.Y. Oct. 20, 2003), *aff'd*, 112 Fed.Appx. 92 (2d Cir. 2004), the plaintiff nurse sued her hospital employer alleging that it discharged her because of her race, age, and disability. The jury found for the plaintiff on her disability claim and awarded $575,000 for past and future pain and suffering, mental anguish, and loss of enjoyment of life. The evidence at trial showed that as a result of her termination the plaintiff had difficulty sleeping, experienced panic attacks, and spent most of her days crying or watching television. She also suffered from a nervous stomach and became socially reclusive and aggressive to her friends. The plaintiff's story was corroborated by her sister, who testified that she was "sad all the time." However, the plaintiff never sought treatment from a psychiatrist. She only offered the testimony of a licensed clinical social worker with a Ph.D., whom she visited once. The doctor stated that the plaintiff suffered from clinical depression and posttraumatic stress disorder. In addition, the doctor concluded that the plaintiff's depression was better than it was after the termination, but would require one to three years of additional psychotherapy in order to fully heal. The District Court remittitur order, which was affirmed by the Second Circuit in 2004, reduced the jury's compensatory damages award from $575,000 to $30,000. Id.

Another example of a "garden variety" award for emotional distress includes this Court's decision in *Luciano v. Olsten Corp.*, 912 F. Supp. 663, 673–674 (E.D.N.Y.

5

1996). In that case the jury found that a successful female executive was unlawfully terminated instead of being promoted to Vice President as promised in writing by the then Chairman and Chief Executive Officer. The jury awarded the plaintiff $ 11,400 for emotional distress. There was testimony that as a result of the termination Luciano was hurt, shocked, upset, overcome with sadness and depression, that she cried, worried about finances, had trouble sleeping and eating and felt purposeless. There was no testimony from a physician. This Court upheld the award of $ 11,400, and the Second Circuit affirmed. *See id.*, 110 F.3d 210 (2d Cir. 1997).

Also, in *Reiter v. Metropolitan Transp. Authority*, No. 01-2762, 2003 WL 22271223, at *1 (S.D.N.Y. Sept. 30, 2003), a Deputy Vice President of Engineering Services successfully proved that the defendants retaliated against him by unlawfully reassigning him to the position of Deputy Vice President of Technical Services. The jury returned a verdict awarding the plaintiff $140,000 in compensatory damages for emotional distress. The testimony revealed that the plaintiff felt " 'stressed,' 'nervous,' 'on edge,' and 'clammy,' but he also admitted that he never had trouble eating or sleeping and he never sought medical or psychological help." *Id.* at *9. The court reduced the award to $10,000, finding that "[t]he jury award of $140,000 [was] plainly based on sympathy or speculation rather than dispassionate common sense." *Id.* at * 11.

A relevant example of a "significant" emotional distress claim is *Leibovitz v. New York City Transit Authority*, 4 F. Supp.2d 144, 146 (E.D.N.Y. 1998), *rev'd on*

*other grounds*, 252 F.3d 179 (2d Cir. 2001). The Plaintiff was a Deputy Superintendent for the defendant New York City Transit Authority and claimed that she suffered emotional distress due to the harassment of other women in the workplace. A jury awarded her the sum of $60,000 in compensatory damages and the court denied the defendant's motion for a remittitur. The Plaintiff "testified about her depression, inability to sleep, weight gain, anxiety and other symptoms of depression." *Id.* at 153. In addition, a psychiatrist "confirmed the extent and substance of her complaints." *Id.*

"Courts have awarded damages for emotional distress in the sum of $ 100,000 only in cases where the employer's discriminatory conduct has caused plaintiff stress which manifested itself in the form of severe emotional or physical reactions." Cucuzza, *supra*, at 445. For example, in *Bick v. City of New York*, No. 95-8781, 1998 WL 190283, at *20 (S.D.N.Y. Apr. 21, 1998), a female sergeant succeeded against the New York City Police Department on her claims of harassment, gender discrimination, and retaliation. The jury awarded the plaintiff $750,000 in compensatory damages. The evidence at trial included testimony from the plaintiff, her therapist, and a supervising officer, who all suggested that her distress was "far more than minimal injury." Id. at *23. In fact, the corroborated testimony showed that the plaintiff was "devastated" and at times "hysterical." The Plaintiff also received treatment from a certified social worker trained in psychotherapy and medication from a psychiatrist. She was diagnosed as suffering from anxiety, depression and feelings of powerlessness

and "suicidal ideation." Id. at *24. In addition, at the time of trial the plaintiff continued to receive treatment, although she was described as improved. Based on this evidence, the court reduced the jury award from $750,000.00 to $100,000.00.

At the high end of the spectrum are awards that are well in excess of $100,000, in cases that generally contain evidence of debilitating and permanent alterations in lifestyle. *See, e.g.*, *Ramirez v. Off Track Betting*, 112 F.3d 38 (2d Cir. 1997) (award of $500,000 appropriate where the plaintiff's psychiatric difficulties had become so severe after his discharge that he was unemployable); *Shea v. Icelandair*, 925 F. Supp. 1014, 1021 (S.D.N.Y. 1996) (awarding damages of $175,000 for mental anguish exacerbated by Parkinson's disease and a heart condition); *see also Town of Hempstead v. State Div. of Human Rights*, 233 A.D.2d 451, 649 N.Y.S.2d 942 (2d Dep't 1996) (awarding $500,000 for "pervasive and relentless" sexual harassment of a former victim of child sex abuse under New York state law under the "deviates materially" standard). The New York "deviates materially" standard is less deferential to a jury verdict than the federal "shock the conscience" standard.

The cases cited above that have upheld awards for emotional distress in excess of $100,000 illustrate the shocking nature of the award in this case. Here, there was no evidence of permanency, debilitation, or physical manifestations of distress. At the trial Rainone, his wife, and Doctor Gary Springstubb, who is a psychologist, testified as to the emotional distress the Plaintiff suffered after not being selected for a promotion

from his position as a supervisor to manager in the United States Postal Service's Long Island Computer Forwarding Service ("CFS").

The sole testimony that the Plaintiff provided with regard to his non-selection was that immediately thereafter his mind was "swimming;" that his "future looked extremely grim;" and that he had developed sleeping and "other manifestations." Trial Tr. at 1028. As a result, the Plaintiff requested sick leave for approximately six months until he had used all of his leave. Remarkably, the Plaintiff emphatically testified that he did not consider himself incapacitated in "any way, shape, or form." Tr. at 1041. Further, the Plaintiff commented that he was enjoying a "productive life," had published two books, and sold collectibles such as comic books on the internet auction website known as "Ebay." Tr. at 1036–37, 1041–42.

The Plaintiff's wife Anne Rainone testified that after learning about the non-selection the Plaintiff was depressed, had difficulty sleeping, was "completely distraught," "frustrated," and "completely shattered." Tr. at 815–16. However, the Plaintiff's testimony indicates that he made a good recovery.

> MR. RAINONE: I do not feel like I'm incapacitated in any way, shape or form. I've actually published my second book just a couple weeks ago in the hobby itself. So I live a productive life. I enjoy what I'm doing. I don't need to go out and look for another job. I can create out of my collection enough income, given my retirement check every month, what my wife is doing to sustain myself.
>
> . . . .

> MR. RAINONE: In any event, all the things I've done, particularly after 2004 since I got my retirement check, which goes on for as long as I live, I probably bring in more now than I made in the postal service. Most of it is not income, but it is working off my annuity, which is my collection. And then I also have my retirement.
>
> Again, I want to reemphasize for the Court and the jury, I'm not disabled. I'm not asking for disability. However, I was incapacitated for a period of time. It's this period of time that I'm asking my [sic] damages. And obviously the only thing I can request at this point in time is some monetary settlement and – for what I consider legitimate reasons, which I'll go into on the damages.
>
> I also need to let you know that I mentioned January 31, 2004. At this time I was 54 years old. I was really only a little over – almost exactly a year away from what would have been my normal retirement had I stayed within the postal service. So it wasn't like there was a tremendous difference in time. It was a one-year difference, and you do get reduction off your retirement for that one-year difference.
>
> . . . .
>
> THE COURT: Okay.
>
> Do you want to tell the jury anything about how you are feeling emotionally at the present time? I don't mean sitting in this witness box but with respect to the conditions you complained about.
>
> MR. RAINONE: Your Honor, I think my testimony has been very clear on that. I said it at least three times, and I said that I do not feel I'm disabled in any regard. And I feel for the time period that is in question, I was incapacitated.

Tr. at 1041–42, 1062.

The Plaintiff's primary evidence of emotional distress came from Dr. Springstubb, who first met with the Plaintiff in June of 1999 shortly after he was not selected for the promotion. His symptoms included depressed mood, difficulty concentrating, insomnia, lethargy, indecisiveness, inability to take pleasure from normal

everyday activities, low self-esteem, and problems with attention. Dr. Springstubb initially diagnosed the Plaintiff as having major depression, recurrent, mild Rainone received treatment from Dr. Springstubb approximately once or twice a month from 1999 to 2003. At no time did the Plaintiff take any medication or consult a medical doctor for his emotional distress. At the end of his treatments in 2003, Dr. Springstubb found that he had greatly improved and symptoms were only present "to some mild degree." Tr. at 748. Also, in his opinion as to present employment, he testified as follows

>BY MR. RAINONE.
>
>Q    If Mr. Rainone were to attempt to go to another employer, could you give your opinion as to what would happen?
>
>A    I could see the plaintiff functioning well in a work environment that he found reasonable and fair and that he enjoyed doing.

Tr. at 749, 750

>BY MR. LIPARI.
>
>Q    How did it come about that he stopped seeing you in 2000?
>
>A    Symptoms decreased, and he was doing better.
>
>Q    And was it your recommendation to discontinue therapy?
>
>A    I concurred with him that he would call me if he needed further treatment.
>
>Q    And he didn't call you until 2005?
>
>A    Correct.

>
> Q	Until March 2005?
>
> A	I believe it was March.
>
> Q	When he called you, did he tell you that he had a lawsuit ready to go to trial?
>
> A	Yeah, he came back to me partly because he was preparing for it, and that brought on some of the symptoms again.

Tr. at 755, 756.

In these circumstances, it is appropriate that Rainone's damages be reduced to an amount that does not materially deviate from the sum that would be reasonable compensation for his emotional injuries. In comparing the evidence presented on the Plaintiff's emotional distress to similar cases, it is apparent that this case falls squarely in the low end of the "significant" range. The Plaintiff suffered from a level of emotional distress after the non-selection to the supervisor position that was more than mere "garden variety." The evidence of emotional distress was corroborated by the testimony of his wife. Rainone also received treatment from a psychologist for four years and was diagnosed with major depression. However, there was no evidence of physical manifestations of emotional distress or debilitating alterations in lifestyle, and no evidence of permanency. A review of comparable cases which address verdicts for emotional distress damages show that, absent serious psychological injuries, such awards generally result in less than $50,000.

Accordingly, based on the testimony and the non-permanent emotional distress sustained by the Plaintiff as a result of the retaliation, the Court finds that the jury award for emotional distress shocks the conscience of the Court. The award for emotional distress should be reduced from $175,000 to $50,000. There will be a new trial on damages, unless the plaintiff agrees to the reduction to the sum of $50,000 for his emotional distress damages. If this remittitur is accepted, the Plaintiff would be entitled to the total sum of $50,000 in compensatory damages, and the sum of $11,166 in back wages for a total sum of $61,166.

**B.     The Plaintiff's Motion for Costs**

Title VII permits a court, in its discretion, to award the prevailing party a reasonable attorney's fee, including expert fees, as part of the costs. *See* 42 U.S.C. § 2000e-5. The statute further provides that the United States shall be liable for the foregoing the same as a private individual. *Id.* However, pro se litigants such at the Plaintiff in this case are not entitled to fee awards or litigation expenses authorized by fee-shifting statutes. *See Kay v. Ehrler*, 499 U.S. 432, 435, 111 S. Ct. 1435; 113 L. Ed. 2d 486 (1991); *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S. Ct. 1933, 76 L. Ed.2d 40 (1983); *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 695 (2d Cir. 1998); *Bridges v. Eastman Kodak Co.*, 102 F.3d 56, 58 n. 1 (2d Cir. 1996); *see, e.g.*, *Clarke v. Parkinson*, 225 F. Supp. 2d 345, 355 (S.D.N.Y. 2002) ("Where an individual litigant elects to undertake legal research, or factual research, or other case-related

tasks, even in order to save counsel fees, the litigant should not expect to have the costs of his or her efforts included in any determination of litigation expenses.").

However, the Plaintiff is entitled to costs, which may include fees to the clerk of the court; fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; fees and disbursements for printing and witnesses; and fees for exemplification and copies of papers necessarily obtained for use in the case. 28 U.S.C. § 1920. The Plaintiff lists as his costs filing fees, transcript costs, printing fees, and an expert witness fee in the amount of $5,302.59. Although the Plaintiff did not submit invoices for these costs, the government does not question the reasonableness of the amounts claimed in his bill of costs. Therefore, the Court accepts the amounts requested as representing reasonable costs necessarily incurred by the Plaintiff during this litigation.

## II.     CONCLUSION

Based on the foregoing, with regard to the remittitur of damages, the Plaintiff may file with the Clerk of the Court on or before October 19, 2005, an acceptance of remittitur damages for emotional distress to the amount of $50,000. In the event that the plaintiff does not file an acceptance of the remittitur on or before October 19, 2005, a new trial solely on the issue of damages for emotional distress will commence on a date to be set by the Court.

If there is a consent to the remittitur, the Clerk is directed to enter judgment in favor of the Plaintiff Joseph L. Rainone against the Defendant John E. Potter, Postmaster General for damages in the total sum of $61,166, together with costs in the sum of $5,302.59.

**SO ORDERED**.

Dated: Central Islip, New York
September 17, 2005

                                            _/s/  Arthur D. Spatt_
                                            ARTHUR D. SPATT
                                           United States District Judge